**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRY C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:25-cv-0449 PLC** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Terry C. seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano denying Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Title II and Title XVI of the Social Security Act. For the reasons set forth below, the Court reverses the Commissioner's decision and remands the case for further proceedings.

## I. Background and Procedural History

In August and September 2021, Plaintiff filed applications for DIB and SSI alleging he was disabled as of May 5, 2020, as a result of spondylolisthesis, "tear[s] in RT RC LT arm, shoulder, buttock + lower back injury, SX repair on LT shoulder, depression, [and] anxiety." (Tr. 360-374)

The Social Security Administration (SSA) denied Plaintiff's claims for benefits at both the initial and reconsideration levels, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 98-108, 110-120, 124-135, 136-147, 202-206) The SSA granted Plaintiff's request for review and the ALJ conducted a hearing on October 27, 2022. (Tr. 40-65)

On December 21, 2021, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 148-168) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which granted review and remanded the case to the ALJ for further consideration. (Tr. 169-174)

Following remand, the ALJ conducted a second hearing in April 2024 and Plaintiff submitted additional evidence for the ALJ's review. (Tr. 66-97) On June 6, 2024, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 10-35) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Counsel, which denied review. (Tr. 1-5, 356-358) Plaintiff has exhausted all administrative remedies, and the ALJ's June 2024 decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

With regard to the medical records and evidence, and the testimony presented at the hearings the Court accepts the facts as presented in the parties' respective statements of facts and responses. [ECF Nos. 21 & 22-1] The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. §§ 423(a)(1), 1381a. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A); 1382c (a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. *Id.* Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a), (c); 416.920(a), (c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a), (d); 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(1)); 404.1520(a), (e); 20 C.F.R. §§ 416.920(e), 416.945(a)(1). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Id.* (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a), (f); 416.920(a), (f); *see McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not

be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); 416.920(a), (g); 416.960(c); *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## III. ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since May 5, 2020, the alleged onset date; and (2) had the severe impairments of degenerative disc disease of the cervical and lumbar spines, osteoarthritis of the bilateral shoulders, and major depressive disorder. (Tr. 16) The ALJ concluded Plaintiff had the non-severe impairment of obesity. (Tr. 16) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16)

The ALJ completed the psychiatric review technique that the regulations prescribe for assessing the severity of Plaintiff's mental impairment.[1] The ALJ found Plaintiff's mental

[1] When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

impairment did not meet or medically equal the criteria of the 12.04 listing of impairments because Plaintiff demonstrated only moderate limitations in the four broad functional areas under paragraph B of the listings. (Tr. 17-18)

Based on his review of the record, the ALJ determined Plaintiff's medically determinable impairments could reasonably cause some of his alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24) Specifically, the ALJ noted that Plaintiff's testimony regarding the duration of time he was able to stand or walk was inconsistent with the medical evidence. (Tr. 24)

The ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following modifications and limitations:

> except [Plaintiff] can lift up to 10 pounds occasionally. He can stand/walk for about 2 hours and sit for up to 6 hours in an 8 hour workday, with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can occasionally overhead reach using bilateral upper extremities. He must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He must avoid frequent exposure to operational control of moving machinery. He must avoid unprotected heights and exposure to hazardous machinery. The claimant's work is limited to simple and routine tasks. His work must be in a low stress job, defined as having only occasional changes in the work setting. He cannot perform work that requires hourly quotas. He must have only occasional interaction with the public, co-workers, and supervisors.

(Tr. 19)

At step four, the ALJ found Plaintiff unable to perform his past relevant work. (Tr. 26) Based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform jobs that existed in significant numbers in the national economy, such as hand packer, production worker, and inspector/tester/sorter. (Tr. 27) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 28)

## IV. Discussion

Plaintiff argues the ALJ did not fulfill his duty to fully and fairly develop the record by failing to obtain updated medical opinions to translate new diagnoses and objective medical evidence into functional limitations. [ECF No. 20] Specifically, Plaintiff contends that the medical treatment and supporting medical records following the functional assessments the state agency consultants rendered in December 2021 and February 2022 require medical opinions to determine Plaintiff's ability to function in the workplace, particularly with respect to his lumbar and cervical spine conditions, depression, and a February 2022 stroke and resulting vision deficits. [ECF No. 20] Plaintiff argues that in the absence of a consultative examination or medical expert to provide medical opinion evidence to support the RFC, the ALJ relied on his own interpretation of the medical evidence and the RFC is not supported by substantial evidence. [ECF No. 20]

The Commissioner responds that the ALJ adequately developed the record and the RFC is supported by substantial evidence. [ECF No. 22] The Commissioner contends that the ALJ is tasked with making an RFC assessment based on all relevant evidence, and that the ALJ properly accounted for Plaintiff's conditions and treatment following the assessments of the state agency consultants. [ECF No. 22]

### A. Standard of Judicial Review

This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts

from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Prosch*, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. <u>Duty to Develop the Record</u>

Plaintiff argues the ALJ had a duty to obtain medical opinion evidence to translate into functional limitations the new diagnoses and objective medical evidence developed after the functional assessments state agency consultants rendered in December 2021 and February 2022. [ECF No. 20] Specifically, Plaintiff contends that in the absence of a consultative examination or medical experts to provide medical opinion evidence regarding Plaintiff's visual impairments resulting from his February 2022 stroke, deterioration and treatment of his lumbar and cervical spines, and Plaintiff's depression, the ALJ relied on his own interpretation of the medical evidence and the RFC is not supported by substantial evidence. [ECF No. 20]

More specifically, Plaintiff asserts the record demonstrates he suffered a stroke in February 2022, resulting in significant bilateral vision defects including, an inferior right quadrantanopia, photophobia, double vision, visual processing delays, intermittent alternating esotropia, and resulting issues with coordination and depth perception. [ECF No. 20] Plaintiff argues that, although the ALJ recognized that Plaintiff suffered peripheral vision loss, the ALJ did not find this

was a severe impairment at step two or obtain medical opinion evidence to translate how Plaintiff's vision impairment affected his ability to function in the workplace, particularly in light of the vocational expert's testimony that double vision "would interfere with pace and production of work-related activities" and would preclude employment. [ECF No. 20] Plaintiff also contends that the state agency medical consultants did not evaluate Plaintiff's cervical spine impairment at all or the bulk of Plaintiff's treatment for his lumbar spine impairment, including surgery, which occurred after the consultants rendered their opinions on Plaintiff's functional limitations. [ECF No. 20] Finally, Plaintiff contends a consultative examination or medical opinion regarding functional limitations was necessary because the state agency consultants opined that Plaintiff had no severe mental impairment, which the ALJ recognized was not supported by the evidence as a whole. [ECF No. 20]

The Commissioner responds that the ALJ adequately developed the record and the RFC is supported by substantial evidence. [ECF No. 22] The Commissioner contends that the ALJ is tasked with making an RFC assessment based on all relevant evidence and he properly accounted for Plaintiff's conditions and treatment following the assessments of the state agency consultants. [ECF No. 22] Specifically, the Commissioner asserts the ALJ properly accounted for Plaintiff's peripheral vision loss caused by his stroke by including "greater and different limitations" as reflected in the RFC's environmental limitations to avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, and irritants; operational control of moving machinery; and unprotected heights and exposure to hazardous machinery. [ECF No. 22] The Commissioner further contends that ALJ considered cervical spine imaging as well as diagnostic tests, examinations, and Plaintiff's treatment history and testimony in determining RFC and limiting Plaintiff to sedentary work. [ECF No. 22] With respect to Plaintiff's depression, the ALJ

considered the independent psychiatric evaluation performed in October 2023 in relation to Plaintiff's worker's compensation claim in rendering the RFC determination. [ECF No. 22]

RFC is the most a claimant can do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §§ 404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul,* 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin,* 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

A claimant for Social Security disability benefits is responsible for providing medical evidence demonstrating the existence of an impairment, its severity during the period of disability, and how the impairment affects the claimant's functioning. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (holding that the burden of persuasion to prove disability and demonstrate RFC remains on the claimant). However, the administrative process is not an adversarial proceeding, and the Commissioner and the claimant's attorney both

share the goal of ensuring "deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). The ALJ has an independent duty to fully and fairly develop the administrative record to make a fair determination as to whether disability exists even where the claimant is represented by counsel. *Id.*

"[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (quoting *Nevland*, 204 F.3d at 858. "In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision." *Caito v. Saul*, 4:20-CV-1727-SRW, 2022 WL 522898, at *4 (E.D. Mo. Feb. 22, 2022) (citing 20 C.F.R. §§ 404.1519a(b), 416.945a(b)).

"There is no bright line test for determining when the [Commissioner] has…failed to develop the record. The determination in each case must be made on a case by case basis." *Battles,* 36 F.3d at 45 (internal quotations omitted). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013)(quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner, Social Security Administration,* 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

In this case, Plaintiff suffered an acute cerebral infarction or stroke in February 2022 resulting in immediate bilateral vision changes, including blurry vision and photophobia. (Tr. 851-901) During a March 2022 appointment with James Goldring, MD, PhD, a neurologist, Plaintiff reported seeing "flashing lines and kaleidoscopic images off to the right side[,]" light sensitivity, and double vision. (Tr. 902) Dr. Goldring recorded Plaintiff's prior diagnosis of homonymous

hemianopsia and noted Plaintiff reported experiencing “double vision since childhood when he had epilepsy[,]” the last episode occurring at the age of eight. (Tr. 902) Dr. Goldring was “uncertain how much more of [Plaintiff’s] vision will improve.” (Tr. 903) Dr. Goldring noted Plaintiff previously possessed a commercial driver’s license and cleared Plaintiff to seek a “formal driver’s evaluation[,]” but observed he was “not certain” Plaintiff would qualify for a commercial driver’s license in the future due to the effects of the stroke. (Tr. 903)

In March 2023, during an appointment with Kyle Dohrman, OD, an optometrist, Plaintiff stated he lost his insurance coverage after his stroke but had recently acquired financial assistance allowing him to reestablish care. (Tr. 1917-1918) Plaintiff was missing the “right side of [his] vision” and experiencing intermittent, binocular diplopia both near and at a distance. (Tr. 1916-1917) Plaintiff reported suffering from intermittent diplopia as a child as a result of seizures which were “not present in adulthood until after his stroke.” (Tr. 1916) Plaintiff stated he was “regularly” tripping and bumping into things. (Tr. 1917) Dr. Dohrman’s examination revealed an inferior right quadrantopsia “consistent” with Plaintiff’s symptoms and stroke history. (Tr. 1918) Examination further revealed intermittent alternating esotropia. (Tr. 1919) Plaintiff reported visual processing delays and difficulty reading, and Dr. Dohrman concluded that Plaintiff’s loss of some of his peripheral vision “may be affecting his ability to fuse images.” (Tr. 1918) Dr. Dohrman observed that Plaintiff was “functionally relatively well” and “able to drive.” (Tr. 1918) Dr. Dohrman recommended reading glasses, a follow up visit “with formal field” in a few months, and consideration of “an evaluation with Drews Low Vision clinic for functional needs.” (Tr. 1918)

During a follow-up visit with Dr. Dohrman in July 2023, Plaintiff reported his eyes had “been all over the place” since his last visit. (Tr. 1922) Plaintiff was “struggling with diplopia at distance and near periodically” and “hardly [had] any peripheral vision at all.” (Tr. 1922) Plaintiff’s coordination and depth perception remained “off” since the stroke. (Tr. 1922) Plaintiff

was experiencing "kaleidoscope" images and light sensitivity, and was "cycling through three different pairs of colored lenses" to assist with photophobia. (Tr. 1922) Plaintiff reported some relief from photophobia through the use of FL-41 colored lenses and requested that his prescription for corrective lenses be filled with these lenses. (Tr. 1921, 1924-1925) The Humphrey Visual Field examination confirmed inferior right quadrantanopsia in both eyes. (Tr. 1922-1923) During physical examinations in April 2022, and between February 2023 and October 2023, examiners and providers noted Plaintiff had impaired vision and was "wearing sunglasses" during the examination. (Tr. 813, 1209-1425)

At the April 2024 hearing, Plaintiff testified he possessed a driver's license and drove "only" if he needed to and for "short distances." (Tr. 73) Plaintiff stated that, as a result of the stroke, he lost some of his peripheral vision in both eyes and experiences photophobia, blurred vision, double vision, and "severe tunnel vision[.]" (Tr. 74, 78) Plaintiff stated he "always" wears tinted glasses due to his "severe light sensitivity[.]" (Tr. 78)

Vocational expert Darrell Taylor, Ph.D. testified at the April 2024 hearing. (Tr. 89) The ALJ asked Dr. Taylor to consider a hypothetical individual with Plaintiff's age, education, and work experience who is able to perform work at the sedentary level with the following limitations:

> occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds[,]…occasionally balance, stoop, kneel, crouch, and crawl[,]…occasionally overhead reach using the bilateral upper extremities[,]…avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration and irritants such as fumes, odors, dust[,] gases, and fairly ventilated area[,]…avoid frequent exposure to operational controlled moving machinery[,]….avoid unprotected heights and exposure to hazardous machinery[,]…stand and walk for about two hours and sit six hours in an eight-hour work day with normal breaks.

(Tr. 91-92)

Dr. Taylor concluded that such an individual could perform jobs such as hand packer, production worker, and inspector/tester/sorter which are all sedentary, unskilled positions. (Tr. 91-

92) The ALJ modified the hypothetical to include work limited to simple and routine tasks, occasional interaction with the public and supervisors, and low stress jobs with only occasional changes to the work setting. (Tr. 93) In response to the modified hypothetical, Dr. Taylor testified the individual would be able to perform the identified jobs. (Tr. 93) However, when the ALJ limited the individual to wearing sunglasses while working, Dr. Taylor stated this "would be an accommodation that most employers would not accept[.]" (Tr. 94-95) When the ALJ modified the hypothetical to include an individual with double vision, Dr. Taylor responded that this condition "would interfere with pace and production or work-related activities" and would not be tolerated by an employer. (Tr. 95) Dr. Taylor testified that his opinion regarding double vision and the use of sunglasses was based on his professional experience. (Tr. 95)

At the hearing, the ALJ inquired about the existence of eye exam records, noting none were in the record. (Tr. 80-81, 88-89) Counsel for Plaintiff acknowledged the absence of the records, and the ALJ provided counsel thirty days to submit them along with additional records regarding some of Plaintiff's other conditions. (Tr. 80-81, 88-89) Following the hearing, counsel submitted the missing records. (Tr. 497-498, 1637-1711, 1712-1926) These records include the 12 pages of records for the eye examinations performed by Dr. Dohrman in March and July 2023 documenting Dr. Dohrman's diagnosis of inferior right quadrantopsia and intermittent alternating esotropia, as well as Plaintiff's complaints of peripheral vision loss, double vision, tunnel vision, "kaleidoscope" vision, photophobia, visual processing delays, and related adverse effects on his coordination and depth perception. (Tr. 1915-1926) They also include Plaintiff's reported use of over-the-counter tinted lenses and Dr. Dohrman's adjustment of Plaintiff's prescription for glasses to accommodate Plaintiff's request for colored lenses for his photophobia. (Tr. 1925) Although Dr. Dohrman noted the need to consider Plaintiff's evaluation by the Drews Low Vision clinic to

assess his "functional needs[,]" the record does not contain a functional assessment related to Plaintiff's vision.

In his determination, the ALJ did not include any of Plaintiff's vision conditions as either severe or non-severe impairments. (Tr. 16) Instead, the ALJ recited Plaintiff's diagnosis of right quadrantopsia and intermittent alternative esotropia; Plaintiff's reports of double vision, photophobia, and use of tinted lenses; and concluded that the March 2022 treatment notes shortly after Plaintiff's stroke documenting "findings specifically related to [Plaintiff's] cerebral infarction are consistent with the environmental limitations assessed." (Tr. 23) The environment limitations in the RFC limit Plaintiff to avoiding frequent exposure to operational control of moving machinery and exposure to unprotected heights and hazardous machinery.[2]

However, in the absence of any assessment of Plaintiff's functional limitations related to his vision, it cannot be said that ALJ's RFC is supported by substantial evidence. While the ALJ acknowledged the evidence of Plaintiff's conditions and tinted lenses requirements in the record, documented in the form of repeated medical treatment provider notes and Plaintiff's testimony, the ALJ made no specific determination as to the credibility of these complaints or explain how these conditions impacted RFC.

While a claimant has the responsibility of providing medical evidence, the administrative process is not adversarial and the ALJ has an independent duty to fully and fairly develop the record. *Battles*, 36 F.3d at 44. Here, the evidence of record clearly demonstrates Plaintiff has confirmed diagnosis resulting in multiple manifestations of visual impairments, but the record

---

[2] The Commissioner asserts the ALJ's additional environmental limitations regarding the avoidance of frequent exposure to extreme temperatures, wetness, humidity, vibration, and irritants were also in consideration of Plaintiff's visual impairments. [ECF No. 22] The connection between these environmental limitations and Plaintiff's visual impairments is not apparent to the Court and, in the absence of any explanation of their connection by the Commissioner, the Court deems them irrelevant for purposes of this analysis.

contains little as to the degree of Plaintiff's impairments and nothing regarding the functional limitations they impose. The lack of a functional assessment is particularly concerning in light of the vocational expert's testimony that two of Plaintiff's complaints or conditions, double vision and the use of certain tinted lenses, could preclude employment.

Here, the absence of any assessment of Plaintiff's functional limitations left a crucial issue undeveloped and the record did not contain enough evidence for the ALJ to determine the impact of Plaintiff's visual impairments on Plaintiff's RFC and his ability to work. Accordingly, the Court reverses the Commissioner's decision and remands the case to give the ALJ an opportunity to more fully develop the record. Because the ALJ will need to consider the additional medical evidence in conjunction with the other evidence of record in reevaluating Plaintiff's RFC, the Court need not address Plaintiff's claims regarding his other physical and mental impairments.

## V. Conclusion

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and the case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment in accordance with this Memorandum and Order is entered this date.

Patricia L. Cohen

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of August, 2026